UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRIAN KNOWLTON, *et al.*, ) | |
| individually, and on behalf of all ) | |
| others similarly situated, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Consolidated Case |
| v. ) | No. 4:13-cv-210 SNLJ |
| ) | |
| ANHEUSER-BUSCH COMPANIES, ) | |
| LLC, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiffs Brian Knowlton, Douglas Minerd, Gary Lensenmayer, Charles R. Wetesnik, Nancy J. Anderson, Richard F. Angevine, Andy Fichthorn, Donald W. Mills, Jr., and Joe Mullins, individually, and on behalf of all others similarly situated, brought this action against defendants Anheuser-Busch Companies, LLC ("ABC"), Anheuser-Busch Companies Pension Plan ("Plan"), Anheuser-Busch Companies Pension Plan Appeals Committee, and Anheuser-Busch Companies Pension Plan Administrate Committee. Plaintiffs allege they are former employees of Busch Entertainment Corporation ("BEC") and are salaried participants in the Pension Plan. Their complaint contains three counts: Counts I and III are for determination of benefits under the Plan, brought under different theories pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), specifically 29 U.S.C. § 1132(a)(1). Count II is against ABC for breach of fiduciary duty. Defendants have moved to dismiss Counts II and III (#32). The matter has been fully briefed and is now ripe for disposition.

I.      Background

The Pension Plan at the heart of this dispute provides, at Section 19.11(f), for certain enhanced retirement benefits in case of a "change of control." That Section states that a salaried participant "whose employment with the Controlled Group is involuntarily terminated within three (3) years after the Change in Control" is entitled to an enhanced pension benefit that adds "an additional five (5) years of Credited Service" and "an additional five (5) years of age" to the benefit calculation, an enhanced amount that "shall in any event be at least fifteen percent (15%) larger" than the benefit to which the participant would have otherwise been entitled ("+5/+5 benefits" or "enhanced benefits"). Plaintiffs allege they are salaried participants in the Plan and former employees of BEC, which was a member of the "Controlled Group" of ABC companies.

In July 2008, Anheuser-Busch InBev, N.V. ("InBev") announced that it was acquiring ABC in November 2008 (the "Acquisition"). Plaintiffs allege that the transaction was a "Change in Control" under the Plan. ABC stated to all salaried employees in a memorandum that "if a participant in the [Plan] is involuntarily terminated within three years after a change in control, the participant's benefits will be determined based on five additional years of age and credited service or by increasing the benefits by 15 percent, whichever provides the larger benefit."

Sometime prior to November 2009, InBev announced that it was selling BEC to the Blackstone Group and that the transaction (the "BEC Sale") would be finalized on December 1, 2009. Plaintiffs assert that, as a result of the BEC Sale, they and all other similarly situated salaried employees of BEC had their employment with the Controlled Group involuntarily terminated within three (3) years of the Change of Control. However, in November 2009 ABC informed the salaried employees of BEC that they "will not be eligible for the +5/+5 enhancement upon the date of your termination of employment with BEC after the sale is

-2-

finalized." Plaintiffs allege that when they filed a claim for the enhanced benefits, the Plan denied the claim. Plaintiffs therefore seek to obtain the enhanced benefits through this ERISA action under Counts I and III. Furthermore, plaintiffs assert that ABC "engaged in an effort to interfere with, influence and direct the Plan Administrator to deny +5/+5 enhanced benefits" to deserving employees and thereby wrongfully interfered with the plaintiffs' rights under the Plan. As a result, plaintiffs also assert a breach of fiduciary duty claim against ABC in Count II. Defendants have moved to dismiss Counts II and III.

**II.     Discussion**

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not do)).

To survive a motion to dismiss, "a claim must be facially plausible, meaning that the 'factual content . . . allows the court to draw the reasonable inference that the respondent is liable for the misconduct alleged.'" *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Iqbal*, 129 S.Ct. at 1949). When determining the facial plausibility of a claim, the Court must "accept the allegations contained in the complaint as true and draw all reasonable

inferences in favor of the nonmoving party." *Id*. (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)).  Finally, where a court can infer from those factual allegations no more than a "mere possibility of misconduct," the complaint must be dismissed.  *Id*. (quoting *Iqbal*, 129 S.Ct. at 1950).  With these principles in mind, the Court turns to defendants' motion.

The Court will address each Count independently.

### A.     Count II

Count II is plaintiffs' fiduciary duty claim against ABC; it is brought pursuant to 29 U.S.C. § 1132(a)(3), which states as follows:

> A civil action may be brought...
>
> (3) by a participant, beneficiary, or fiduciary
>
>> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or
>>
>> (B) to obtain other appropriate equitable relief
>>
>>> (I) to redress such violations or
>>>
>>> (ii) to enforce any provisions of this subchapter or the terms of the plan

29 U.S.C. § 1132(a)(3).  Plaintiffs state that they are proceeding under Section 1132(a)(3)(B), "to obtain other appropriate equitable relief," namely to cause ABC to make the payments to the Plan that plaintiffs say would have been required under the Plan and ERISA had ABC not improperly interfered with the Plan (and its committees') interpretation of Section 19.11(f)'s enhanced benefits provision.

Defendants argue that Count II should be dismissed because it is a mere repackaging of Count I's claim for benefits.  Section 1132(a)(3) "permits plan participants and beneficiaries to 'seek equitable remedies in [their] individual capacit[ies] for a breach of fiduciary duty not

-4-

specifically covered by other enforcement provisions of section 1132.'" *Pichoff v. QHG of Springdale, Inc.*, 556 F.3d 728, 731 (8th Cir.2009) (alterations in original) (quoting *Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 943 (8th Cir.1999), and citing *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996) and 29 U.S.C. § 1104).  However, "where a plaintiff is provided adequate relief by the right to bring a claim for benefits under § 1132(a)(1)(B), the plaintiff does not have a cause of action to seek the same remedy under § 1132(a)(3)(B)." *Geissal ex rel. Estate of Geissal v. Moore Med. Corp.*, 338 F.3d 926, 933 (8th Cir. 2003) (quoting *Conley v. Pitney Bowes*, 176 F.3d 1044, 1047 (8th Cir.1999)) (internal quotation marks omitted).

Plaintiffs argue that the equitable relief sought by Count II is not a "repackaged benefits claim" as characterized by ABC because it seeks no money for the plaintiffs.  Plaintiffs distinguish Count I and Count II on the basis that Count I seeks money from the Plan to the plaintiffs, and Count II seeks payment of money from ABC to the Plan.  Plaintiffs explain that the remedy they seek — having ABC make payments to the Plan — is an appropriate remedy for the "unjust enrichment ABC has enjoyed as a result of its breach of fiduciary duties."  (#37 at 6.)

Count II's allegations are fairly simple: plaintiffs allege that ABC supplied a rationale and directed the Plan Administrators to deny the enhanced benefits to plaintiffs in order to "reduce the cost of the Plan to ABC, thereby depriving plaintiffs of an unbiased decision on their claim, in violation of ERISA." (#31, Cmplt. ¶ 75.)  Plaintiffs say that they and the Plan have been "damaged by ABC's failure to fully fund the increase in retirement benefits to be provided to the class members under Section 4.3 and 19.11(f) of the Plan as a result of the sale of BEC." (*Id.* ¶ 77.)

"To establish a claim for breach of fiduciary duty based on alleged misrepresentations concerning coverage under an employee benefit plan, a plaintiff must show: (1) that the

defendant was acting in a fiduciary capacity when it made the challenged representations; (2) that these constituted material misrepresentations; and (3) that the plaintiff relied on those misrepresentations to their detriment." *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002) (citing *Ballone v. Eastman Kodak Co.*, 109 F.3d 117, 122, 126 (2d Cir. 1997)). Defendant ABC does not appear to contest that it acted as a fiduciary.  However, defendant contends that no "misrepresentation" nor any "reliance" has been alleged.

Plaintiffs argue that ABC misrepresented that the Plan participants were not entitled to the enhanced benefits when in fact ABC knew that the sale of BEC triggered the plaintiffs' rights to enhanced benefits.  The Consolidated Complaint states that ABC "direct[ed] the Plan and its administrators to deny [plaintiffs'] claim for +5/+5 enhanced benefits . . .". (#31 at ¶ 14.)  To the extent that could constitute a misrepresentation, however, it is clear plaintiffs are provided adequate relief by the right to bring a claim for benefits under § 1132(a)(1)(B) (which they have done in Count I), thus the plaintiffs do not have a cause of action to seek the same remedy under § 1132(a)(3)(B).  *See Geissal*, 338 F.3d at 933.  Plaintiffs suggest that they are not provided with "adequate relief" because they and the Plan "have been damaged by ABC's failure to fully fund the increase in retirement benefits to be provided to the class members under Sections 4.3 and 19.11(f) of the Plan as a result of the sale of BEC." (#31 at ¶ 77.)  Again, plaintiffs are looking at two sides of the same coin.  If they succeed with their Count I benefits claim pursuant to § 1132(a)(1)(B), then the Plan would be required to pay those benefits *and* to satisfy any Plan funding requirements mandated by the appropriate statutory provisions.  Plaintiffs' insistence that ABC be required to fund the Plan as required to pay out the enhanced benefits via a § 1132(a)(3) claim is unnecessary: such "relief" would have already been provided through their § 1132(a)(1)(B) claim and ERISA funding provisions.

The Court also notes that the plaintiffs' claim is flawed in that they fail to allege that they relied on the alleged "misrepresentation." Indeed, they did not rely on it because they filed claims for the enhanced benefits despite having been told that they would not be granted those benefits. Plaintiffs, apparently conceding the point, suggest that reliance is not required pursuant to *CIGNA Corp. v. Amara*, 131 S. Ct 1866 (2011). Plaintiffs' reliance on *CIGNA* is misplaced. In *CIGNA*, the trial court had held that the employer's descriptions of its pension plan were incomplete and inaccurate and, as a remedy, ordered the pension plan reformed such that the employer was held to what it had promised. The Supreme Court considered whether that remedy had been properly ordered pursuant to § 1132(a)(1)(B), which speaks of contract enforcement rather than reformation. *See* 131 S.Ct. at 1876. The Court, holding that the reformation was not proper pursuant to § 1132(a)(1)(B), observed that § 1132(a)(3) could provide a vehicle for such relief. *Id.* at 1880. Discussing the legal standard for determining whether members of the class had been injured, the Court held that "any requirement of harm must come from the law of equity." *Id.* at 1881. In that context, the Court noted that "there is no general principle that 'detrimental reliance' must be proved before a remedy is decreed." *Id.* The *CIGNA* "plan participant or beneficiary must show that the violation injured him or her," but they "need only show harm and causation" under the circumstances set forth in that case. *Id.* at 1881-82. Here, plaintiffs do not seek contract reformation, nor is any other equitable relief supported by the complaint. Rather, the complaint goes to plaintiffs' claim for benefits to which they believe the Plan — as written — entitles them. Plaintiffs cannot repackage that claim for benefits as a claim for equitable relief. Count II will be dismissed.

  **B.**  **Count III**

Plaintiff Angevine alleges in Count III that he is entitled to enhanced benefits because he was terminated from SeaWorld on February 28, 2011, which was prior to the end of the three-year Change in Control period.  Angevine alleges that the Plan and its administrators "refuse to apply the provisions of Section 19.11(f) of the Plan to determine Plaintiff Angevine's future retirement benefits and refuse to apply those provisions to determine the future retirement benefits of the other Plan participants who [sic] employment with SeaWorld was involuntarily terminated prior to November 18, 2011." (#31, Cmplt. at ¶ 89.)  Defendants move to dismiss that count because (1) plaintiff Angevine does not allege that he exhausted or even filed a claim in connection with his termination from SeaWorld, and (2) plaintiff Angevine does not allege SeaWorld was a member of the Controlled Group.

This Court cannot consider unexhausted benefits claims.  *Galman v. Prudential Ins. Co. of Am.*, 254 F.3d 768, 770 (8th Cir. 2001). Plaintiff Angevine states the defendants fail to consider the "complete record of Angevine's administrative appeal."  (#37 at 3.)  Angevine goes on to state that he sent the Plan a letter on March 11, 2011 that informed the Plan of Angevine's employment termination with SeaWorld and stating that he was entitled to his enhanced benefit. Angevine attached a copy of that letter to his response memorandum.  It appears that Angevine was already in the process of appealing his claim with the Plan, and that the letter provided the Plan with more information about his claim.  Indeed, exhibits to the Consolidated Complaint show that Angevine applied for benefits on August 30, 2010, was denied benefits on November 24, 2010, appealed that denial on January 19, 2011, and had his appeal denied on May 17, 2011.  Those facts were incorporated into Angevine's Count III, but given that Angevine was terminated from SeaWorld on February 28, 2011, it is not clear *from the complaint* how the Plan could have

been advised of and resolved Angevine's alternative theory.[1]  The Court may not consider matters outside the pleadings, and the plaintiff may not amend his complaint through his memorandum in opposition to a motion to dismiss.  *See Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989).  As a result, the Motion will be granted as to Count III, but plaintiffs are granted 21 days in which to amend his complaint.

Defendants also suggest that plaintiff Angevine's Count III fails because he does not allege that SeaWorld is a member of the Controlled Group of companies that is subject to the Plan.  According to the complaint, the Plan and Section 19.11(f) cover employees with companies within the Controlled Group of companies.  Plaintiff responds that SeaWorld was not among the Controlled Group, but that it is not his employment with SeaWorld that entitled him to enhanced benefits — rather, it was his employment with the Controlled Group that so entitled him.  Angevine's subclass includes participants who, he alleges, experienced a termination of employment with a Controlled Group company and then experienced an actual break in employment.  To the extent defendants contend they were not eligible for benefits, that argument is not appropriate for resolution on a motion to dismiss.

Accordingly,

**IT IS HEREBY ORDERED** that defendants's motion to dismiss, #32, is GRANTED, and Counts II and III plaintiffs' consolidated complaint are DISMISSED.

**IT IS FURTHER ORDERED** that plaintiffs shall have 21 days in which to file an amended Count III.

Dated this   30th   day of October, 2013.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE

---

[1] To the extent defendants suggest Angevine should have filed a separate claim upon his termination from SeaWorld, they do not support that statement with citations to law or fact.