UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRIAN KNOWLTON, *et al.*, individually, and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Consolidated Case ) No. 4:13-cv-210 SNLJ ) |
| ANHEUSER-BUSCH COMPANIES, LLC, *et al.*, | ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendants' motion to dismiss plaintiffs' Amended Count III of the Consolidated Complaint (#45). This Court previously dismissed Count III, which alleged that plaintiff Angevine is entitled to certain enhanced benefits under his Pension Plan pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), specifically 29 U.S.C. § 1132(a)(1). The Court offered plaintiff time to file an amended complaint, and he has done so. The defendants' motion to dismiss has been fully briefed and is ready for disposition.

**I.    Background**

Plaintiffs allege they are former employees of Busch Entertainment Corporation ("BEC"), which was a member of the "Controlled Group" of Anheuser-Busch Companies, LLC ("ABC"). Plaintiffs further allege they are salaried participants in the Anheuser-Busch Companies Pension Plan ("Plan" or "Pension Plan").

The Pension Plan at the heart of this dispute provides, at Section 19.11(f), for certain enhanced retirement benefits in case of a "change of control." That Section states that a salaried

participant "whose employment with the Controlled Group is involuntarily terminated within three (3) years after the Change in Control" is entitled to an enhanced pension benefit that adds "an additional five (5) years of Credited Service" and "an additional five (5) years of age" to the benefit calculation, an enhanced amount that "shall in any event be at least fifteen percent (15%) larger" than the benefit to which the participant would have otherwise been entitled ("+5/+5 benefits" or "enhanced benefits").

In July 2008, Anheuser-Busch InBev, N.V. ("InBev") announced that it was acquiring ABC in November 2008 (the "Acquisition"). Plaintiffs allege that the transaction was a "Change in Control" under the Plan. ABC stated to all salaried employees in a memorandum that "if a participant in the [Plan] is involuntarily terminated within three years after a change in control, the participant's benefits will be determined based on five additional years of age and credited service or by increasing the benefits by 15 percent, whichever provides the larger benefit."

Sometime prior to November 2009, InBev announced that it was selling BEC to the Blackstone Group and that the transaction (the "BEC Sale") would be finalized on December 1, 2009. Plaintiffs assert that, as a result of the BEC Sale, they and all other similarly situated salaried employees of BEC had their employment with the Controlled Group involuntarily terminated within three (3) years of the Change of Control. However, in November 2009 ABC informed the salaried employees of BEC that they "will not be eligible for the +5/+5 enhancement upon the date of your termination of employment with BEC after the sale is finalized." Plaintiffs allege that when they filed a claim for the enhanced benefits, the Plan denied the claim. Plaintiffs therefore seek to obtain the enhanced benefits through this ERISA action under Count I.

Count III covers a class of individuals who, like plaintiff Angevine, were fired sometime after the sale of BEC to Blackstone. Plaintiff Angevine alleges that he applied for immediate early retirement with +5/+5 enhanced benefits on August 30, 2010. His claim was denied in a letter on November 24, 2010. That denial letter stated that the enhanced benefits did not apply unless there was "an actual break in an individual's employment, rather than simply a change in the owner." Angevine appealed the denial via letter on January 19, 2011. The letter requested copies of certain documents and reserved the right to submit additional comments and issues for consideration by the Committee upon receipt of the requested documents. Angevine was terminated[1] by BEC — which was by then renamed Seaworld — on February 28, 2011, while his appeal was pending and before he received the requested documents. So on March 11, 2011, Angevine again wrote the A-B pension department appeals committee and stated that if the Plan Administrators were allowed to condition his entitlement to the +5/+5 enhancement on actual termination of employment, then his appeal must be granted because his employment had been terminated. Thus, Angevine argues, he was no longer employed, and he was no longer employed by the Controlled Group, so he suggested he was eligible for the enhanced benefit.

The Committee sent Angevine the information he had requested on April 15, 2011. They sated that they would accept any additional information from him through May 13, 2011. On May 17, 2011, the Committee denied Angevine's appeal.

---

[1] Angevine alleges he was terminated because he had completed training his replacement — a group of accountants located in India.

## II. Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not do)).

To survive a motion to dismiss, "a claim must be facially plausible, meaning that the 'factual content . . . allows the court to draw the reasonable inference that the respondent is liable for the misconduct alleged.'" *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Iqbal*, 129 S.Ct. at 1949). When determining the facial plausibility of a claim, the Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id*. (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)). Finally, where a court can infer from those factual allegations no more than a "mere possibility of misconduct," the complaint must be dismissed. *Id*. (quoting *Iqbal*, 129 S.Ct. at 1950). With these principles in mind, the Court turns to defendants' motion.

**III.    Discussion**

Defendants move to dismiss that count because (1) Angevine has not filed or exhausted any claim related to his alleged termination from SeaWorld, and (2) Angevine does not allege adequately that pursuing administrative review for the new claim would be futile.

This Court cannot consider unexhausted benefits claims where a particular Plan provides for and requires an administrative review process.  *Galman v. Prudential Ins. Co. of Am.*, 254 F.3d 768, 770 (8th Cir. 2001).  Angevine maintains that he filed and exhausted his claim related to his termination because he wrote to Plan on March 11, 2011.  That letter informed the Plan of Angevine's employment termination with SeaWorld and stated that he was entitled to his enhanced benefit. Here, defendants state that plaintiff did not submit a "claim" for benefits based upon his termination, and that he could not merely fold into his original claim his entirely new basis for enhanced benefits.

Defendants cite to the purpose of the "exhaustion rule," which is to ensure that a plan administrator possesses sufficient information to decide a claim.  *Chorosevic v. MetLife Choices*, 600 F.3d 934, 941 (8th Cir. 2010). Specifically, defendants complain that Angevine did not provide them with details or context related to his employment at SeaWorld, and they set forth a laundry list of information which they say Angevine should have supplied to them, *e.g.*, proof of termination, the basis for the termination, whether he was offered a transfer, from which entity he was terminated, and any severance package information.  Defendants say that they "invited" Angevine to supply that information.  Presumably, defendants refer to their April 15, 2011 letter, which, although it did not mention the alleged termination at all, stated that "you may provide the [Committee] with any additional information you believe to be relevant to Mr. Angevine's claim...by May 13, 2011."  Indeed, neither party appears to mention the fact of Angevine's

termination — or its relationship to his claim for enhanced benefits — after Angevine sent his March 11 letter.

Defendants rely upon *Chorosevic* for their exhaustion argument. Notably, that opinion affirmed a summary judgment against the plaintiff for failure to exhaust her claims before her plan's appeals committee. 600 F.3d at 942. The plaintiff there argued that a letter she had sent during the appeals process had raised two claims for reimbursement of money paid for certain medical procedures. However, although plaintiff generically referred to a category of claims in that letter and mentioned a specific claim for $69.20, the letter did not mention the two claims at issue, which were for $191.10 and $13.00. *Id.* The Court noted that "Section 502(a) of ERISA does not require either issue or theory exhaustion; it requires *only* claim exhaustion." *Id.* (quoting *Wolf v. Nat'l Shopmen Pension Fund*, 728 F.2d 182, 186-87 (3d Cir. 1984) (emphasis in original).

In contrast — unlike the plaintiff in *Chorosevic* — plaintiff Angevine has pleaded that he made one claim for his +5/+5 enhanced benefits under the Plan. The argument that he set forth in his March 11 letter sets forth a new theory for obtaining those same benefits. To the extent defendants contend that Angevine was required to furnish them with more information in support of that new theory, that contention cannot dispose of plaintiffs' Count III in a motion to dismiss. Plaintiff Angevine has adequately pleaded that he, along with a subclass of others like him, are entitled to the enhanced benefits after his actual termination from his employment with SeaWorld. Whether that Count can be successful on its merits is another question for another day.

Accordingly,

**IT IS HEREBY ORDERED** that defendants's motion to dismiss, #45, is DENIED.

Dated this  9th  day of May, 2014.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE