UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRIAN KNOWLTON, *et al.*, ) <br> individually, and on behalf of all ) <br> others similarly situated, ) <br>   ) <br>   Plaintiffs, ) <br>   ) <br>   ) Consolidated Case <br> v. ) No. 4:13-cv-210 SNLJ <br>   ) <br> ANHEUSER-BUSCH COMPANIES, ) <br> LLC, *et al.*, ) <br>   ) <br>   Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiffs Brian Knowlton, Douglas Minerd, Gary Lensenmayer, Charles R. Wetesnik, Nancy J. Anderson, Richard F. Angevine, Andy Fichthorn, Donald W. Mills, Jr., and Joe Mullins, individually, and on behalf of all others similarly situated, brought this action against defendants Anheuser-Busch Companies, LLC ("ABC"), Anheuser-Busch Companies Pension Plan ("Plan"), Anheuser-Busch Companies Pension Plan Appeals Committee, and Anheuser-Busch Companies Pension Plan Administrate Committee. Plaintiffs allege they are former employees of Busch Entertainment Corporation ("BEC"), are salaried participants in the Pension Plan, and are entitled to certain enhanced benefits under the Pension Plan pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), specifically 29 U.S.C. § 1132(a)(1).

Currently before the Court is the plaintiffs' motion for class certification under Federal Rule of Civil Procedure 23 (#57). Plaintiffs' motion has been fully briefed and is ready for disposition.

## I. Background

Plaintiffs allege they are former employees of Busch Entertainment Corporation ("BEC"), which was a member of the "Controlled Group" of Anheuser-Busch Companies, LLC ("ABC"). Plaintiffs further allege they are salaried participants in the Anheuser-Busch Companies Pension Plan ("Plan" or "Pension Plan").

The Pension Plan at the heart of this dispute provides, at Section 19.11(f), for certain enhanced retirement benefits in case of a "change of control." That Section states that a salaried participant "whose employment with the Controlled Group is involuntarily terminated within three (3) years after the Change in Control" is entitled to an enhanced pension benefit that adds "an additional five (5) years of Credited Service" and "an additional five (5) years of age" to the benefit calculation, an enhanced amount that "shall in any event be at least fifteen percent (15%) larger" than the benefit to which the participant would have otherwise been entitled ("+5/+5 benefits" or "enhanced benefits").

In July 2008, Anheuser-Busch InBev, N.V. ("InBev") announced that it was acquiring ABC in November 2008 (the "Acquisition"). Plaintiffs allege that the transaction was a "Change in Control" under the Plan. ABC stated to all salaried employees in a memorandum that "if a participant in the [Plan] is involuntarily terminated within three years after a change in control, the participant's benefits will be determined based on five additional years of age and credited service or by increasing the benefits by 15 percent, whichever provides the larger benefit."

Sometime prior to November 2009, InBev announced that it was selling BEC to the Blackstone Group and that the transaction (the "BEC Sale") would be finalized on December 1, 2009. Plaintiffs assert that, as a result of the BEC Sale, they and all other similarly situated

salaried employees of BEC had their employment with the Controlled Group involuntarily terminated within three years of the Change of Control. However, in November 2009 ABC informed the salaried employees of BEC that they "will not be eligible for the +5/+5 enhancement upon the date of your termination of employment with BEC after the sale is finalized." Plaintiffs allege that when they filed a claim for the enhanced benefits, the Plan denied the claim. Plaintiffs therefore seek to obtain the enhanced benefits through this ERISA action under Count I, and they propose to proceed on behalf of a class of plaintiffs to be defined as follows:

> All persons who were: (a) participants in the Anheuser-Busch Companies Pension Plan in 2008; (b) employed by Anheuser-Busch Companies, LLC or any of its operating divisions and subsidiaries (the "Controlled Group") on both November 17 and November 18, 2008; and (c) employed as a salaried employee by Busch Entertainment Corporation on December 1, 2009.

This Court must certify such a class under Federal Rule of Civil Procedure 23 before this action may proceed as a class action.

## II.     Standard for Certifying a Class

Federal Rule of Civil Procedure 23(a) establishes four prerequisite conditions to the maintenance of a class action: (1) numerosity, which requires that the class must be "so numerous that joinder of all members is impracticable," (2) commonality, which requires that "there are questions of law or fact common to the class," (3) typicality, which requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class," and (4) adequacy, which ensures that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see also Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982); *Rikard v. U.S. Auto Prot., LLC*, 287 F.R.D. 486, 489 (E.D. Mo. 2012).

In addition, a party seeking class certification must meet one of three listed types of class

actions under Rule 23(b). Here, plaintiff requests certification under Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

The "plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met." *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994).

**III.  Discussion**

Plaintiffs contend that they meet Rule 23(a)'s four requirements as follows:

**Numerosity**: Some 800 persons meet the stated class definition. Requiring each of those individuals to bring his or her own legal action undoubtedly would be inconvenient and costly to both individuals and the legal system.

**Commonality**: Each of the proposed class members have or will have suffered the same injury, that is, denial of the +5/+5 enhancement. Plaintiffs state that resolution of the two key issues (whether the Plan is ambiguous and what does the Plan mean when it says "whose employment with the Controlled Group is involuntarily terminated within three (3) years after the Change in Control) are issues capable of classwide resolution. As plaintiffs put it, the answer to those two issues will resolve all of the claims of all of the putative class members in a single stroke.

**Typicality**: Each of the named plaintiffs shares the same grievance, and each putative class member shares the same grievance. Plaintiffs state that all are entitled to enhanced pension benefits because of their "involuntary termination" of their employment with the Controlled Group within three years of the Change in Control. The plaintiffs are all in the same position because ABC announced in November 2009 that salaried employees of BEC would "not be

eligible for the +5/+5 enhancement upon the date of your termination of employment with BEC after the sale is finalized." On the other hand, plaintiffs readily admit that the absent class members have not filed or exhausted claims with the Plan yet. That matter will be discussed further below.

Finally, **adequacy**: Plaintiffs' selected class counsel have supplied affidavits demonstrating their capabilities with respect to complex ERISA litigation. In addition, the proposed class representatives' interests are aligned with those of the absent class members.

Defendants oppose class certification. However, their opposition is based on only one of Rule 23(a)'s four requirements. They argue that plaintiffs cannot demonstrate typicality because most (or all) of the absent class members have not initiated or exhausted the Plan's internal administrative claim process.

Exhaustion of administrative remedies by class members in ERISA cases has not been addressed by the Eighth Circuit. It appears, however, that the majority of district courts certify ERISA classes where the class representatives have each exhausted their administrative remedies, even if other class members have not. *See, e.g.*, *Matz v. Household Int'l Tax Reduction Inv. Plan*, 232 F.R.D. 593, 597 (N.D. Ill. 2005) ("requiring exhaustion by only the named plaintiffs is the better approach") (collecting cases) *aff'd sub nom. In re Household Int'l Tax Reduction Plan*, 441 F.3d 500 (7th Cir. 2006) ; *Clarke v. Ford Motor Co.*, 220 F.R.D. 568, 576 (E.D. Wis. 2004) ("To require all class members to exhaust administrative remedies would place an unnecessary procedural hurdle in the path of ERISA plaintiffs and, thus, contravene ERISA's goal of protecting the interests of participants in benefit plans by providing convenient access to the federal courts."), *vacated on other grounds*, 228 F.R.D. 631 (E.D. Wis. 2005); *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 395 (E.D. Pa. 2001) ("in the context of

an ERISA class action, only the named plaintiffs must exhaust their administrative remedies"); *Laurenzano v. Blue Cross & Blue Shield of Massachusetts*, *Inc. Ret. Income Trust*, 134 F. Supp. 2d 189, 211 (D. Mass. 2001) ("because this is a class action, all that matters is whether the lead plaintiff has exhausted his remedies") (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 414 n. 8 (1975)); *Adams v. Anheuser-Busch Cos., Inc.*, No. 2:10-cv-826, 2012 WL 1058961, *6 (S.D. Ohio March 28, 2012) ("In light of the nature of this case, the court will not require exhaustion of administrative remedies as a prerequisite for class membership"). *But see Coffin v. Bowater Inc.*, 228 F.R.D. 397, 404 (D. Me. 2005) (requiring potential class members to exhaust before becoming part of the plaintiff class); *Gosselink v. American Telephone & Telegraph, Inc.*, No. H-97-3854, 1999 WL 33737340, at *8 (S.D. Tex. Aug. 9, 1999) (holding that named plaintiff was required to provide evidence of the number of class members who had exhausted to satisfy the numerosity requirement).

Exhaustion of administrative remedies is a judicially-created requirement in ERISA cases that serves an important purpose: "It enables an employer, or its plan, to obtain full information about a claim for benefits, to compile an adequate record, and to make a reasoned decision." *Back v. Danka Corp.*, 335 F.3d 790, 792 (8th Cir. 2003). In addition, the "process is of substantial benefit to reviewing courts, because it gives them a factual predicate upon which to proceed." *Id.* The requirement is discretionary, however, as it "is not intended to place a meaningless procedural hurdle in front of plaintiffs who desire to bring claims for violations of their rights under ERISA in federal court." *Matz*, 232 F.R.D. at 598 (quoting *Gallegos v. Mount Sinai Med. Ctr.*, 210 F.3d 803, 808-9 (7th Cir. 2000). "Rather, the requirement is aimed at encouraging claimants to pursue private remedies and develop a proper administrative record before entering federal court." *Id.* (quoting *Gallegos*, 210 F.3d at 809). As the district court in

*Matz* determined, and the Seventh Circuit affirmed, the approach requiring only the named plaintiffs in ERISA class actions to exhaust administrative remedies "best supports this policy because the administrative record can be developed by the named plaintiff without requiring duplicative exhaustion by all unnamed class members." *Id.*

In a class action lawsuit brought by the former employees of another ABC spin-off, the Southern District of Ohio adopted the reasoning of the *Matz* court in certifying the class. *Adams*, 2012 WL 1058961, at *6. The plaintiffs' question there was precisely the same as the question here — that is, whether the former employees were entitled to +5/+5 enhanced benefits following their company's sale by ABC to a third party. *Id.* at *1. As here, plaintiffs were notified that their claims for enhanced benefits based upon the sale of their company would be denied because the employees had accepted employment with the buyer. *Id.* The district court there observed that not all potential class members had exhausted their administrative remedies, but such fact did not prohibit such members from becoming members of the class. Although the exhaustion of administrative remedies under an ERISA plan "furthers the goals of minimizing the number of frivolous lawsuits, promoting non-adversarial dispute resolution, and decreasing the cost and time necessary for settlement....and enables the compilation of a complete record,"[1] those purposes should "determine how much exhaustion to require in a class action." *In re Household Int'l Tax Reduction Plan*, 441 F.3d at 501-02, *quoted in Adams*, 2012 WL 1058961, at *5. "This is emphatically the case when dealing with class actions under ERISA, where, there being no statutory requirement of exhaustion, the district court has discretion to require no exhaustion by

---

[1] The Eighth Circuit has identified a similar list of purposes served by the exhaustion requirement. *Back*, 335 F.3d at 792; *see also Conley v. Pitney Bowes*, 34 F.3d 714, 718 (8th Cir. 1994).

anyone." *Id.* at 502. The court in *Adams* observed that "This is not a frivolous lawsuit. The named plaintiffs and approximately sixty other[s....] have now exhausted their administrative remedies and have been denied benefits. This administrative exhaustion was sufficient to promote the consistent treatment of claims, to provide defendants with an adequate opportunity to settle plaintiffs' claims, and to permit the Plan administrator to consider the claims, interpret the Plan provisions, and correct any errors." *Adams*, 2012 WL 1058961, at *6.

The same is true here. Although defendants make much of the fact that a much smaller proportion of potential class members have exhausted their administrative remedies here, the issue at hand — the meaning and application of § 19.11(f) — was settled on defendants' part even before the sale of BEC took place. And since that time, defendants have uniformly responded to the named plaintiffs' claims for enhanced benefits by using identical language. Moreover, the reason for the denials is consistent and based not on facts specific to the Plan Participant, but rather on the Plan's already-settled interpretation of § 19.11. Defendants call this approach the "tail wagging the dog," but they do not identify any benefit that may arise from the filing of more claims, nor do they even suggest that the result would be any different for those potential class members who have not yet filed.

Indeed, the exhaustion requirement may be waived in situations where exhaustion of administrative remedies would be futile. *Burds v. Union Pacific Corp.*, 223 F.3d 814, 817 n.4 (8th Cir. 2000) (quoting *Glover v. St. Louis-San Francisco Ry.*, 393 U.S. 324, 330 (1969)). Defendants insist that plaintiffs have not pleaded facts showing exhaustion would be futile, but the Court disagrees: Plaintiffs have alleged that the Plan's denials have been of general application, not based on facts specific to individual claimants. The Plan has denied all of the named plaintiffs' claims using the same language. In addition, plaintiffs note that the Plan

denied 60 claims brought by the spun-off subsidiary employees in the *Adams* case. As others

courts have found in similar cases, where the "record shows that the plan administrator's

decision interpreting the plan was one of general applicability to all persons affected by the sale

of the [subsidiary]," requiring each of the proposed class members to exhaust would be futile.

*Dalesandro v. Int'l Paper Co.*, 214 F.R.D. 473, 483 (S.D. Ohio 2003), *cited by Adams*, 2012 WL

1058961, at *6. "After rejecting plaintiffs' interpretation of the Plan provisions over sixty times,

'it is clear that the Plan administrator would not have reached a different decision had the non-

filers filed individual claims for severance benefits.'" *Adams*, 2012 WL 1058961, at *6 (quoting

*Dalesandro*, 214 F.R.D. at 395). The *Adams* court thus found that even if the unnamed plaintiffs

were required to exhaust their administrative remedies, such a requirement would be futile. *Id.*

The defendants cannot seriously contend otherwise in light of the Plan's announced (and

consistently applied) policy with respect to § 19.11(f). Therefore, the Court finds that the

plaintiffs have met Rule 23(a)'s typicality requirement, and thus Rule 23(a) is satisfied by the

proposed class.

      Furthermore, the requirements of Rule 23(b)(2) have also been met in that the defendants

have "acted or refused to act on grounds that apply generally to the class, so that final injunctive

relief or corresponding declaratory relief is appropriate respecting the class as a whole."

"Individuals comprising a Rule 23(b)(2) class are . . . generally bound together through

preexisting or continuing legal relationships or by some significant common trait such as race or

gender." *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1035 (8th Cir. 2010) (internal quotation

omitted (quoting *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1121 (8th Cir. 2005)). Plaintiffs seek

declaratory relief as to all of the class members, who were each employees of the spun-off BEC.

Specifically, plaintiffs seek a declaration that defendants' interpretation of § 19.11(f) was unlawful. Rule 23(b)(2) is satisfied.

Finally, defendants state that the plaintiffs' class definition is "unworkable" because one of the definition's elements is that the class member was "employed as a salaried employee by [BEC] on December 1, 2009." Defendants point out that BEC was sold on December 1, 2009 to the Blackstone Group, so BEC did not exist on that date. Although plaintiffs do not respond specifically to this criticism, it does not appear that this matter of transactional nuance cannot be overcome. Surely the parties can agree on some definition that will adequately describe the class members who were, at the time of the sale, employees of BEC.

The Court finds that the requirements of Rules 23(a) and 23(b) have been met by the plaintiffs's proposed class for Count I of their amended complaint.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion to certify class for Count I of their amended complaint, #58, is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiffs Nancy J. Anderson, Richard F. Angevine, and Brian Knowlton are appointed class representatives for the plaintiffs' class.

**IT IS FURTHER ORDERED** that attorney Joseph R. Dulle (Bar No. 38416MO) and the law firm of Stone, Leyton & Gershman, A Professional Corporation, and attorney Joe D. Jacobson (Bar No. 33715MO) and the law firm of Green Jacobson, P.C., and attorney Scott J. Stitt (admitted pro hac vice) and the law firm of James E. Arnold & Associates, LPA, are appointed class counsel for the plaintiffs' class.

Dated this   16th   day of May, 2014.

STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE