UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRIAN KNOWLTON, *et al.*, ) | |
| individually, and on behalf of all ) | |
| others similarly situated, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Consolidated Case |
| v. ) | No. 4:13-cv-210 SNLJ |
| ) | |
| ANHEUSER-BUSCH COMPANIES, ) | |
| LLC, *et al.*, ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

This matter is before the Court on plaintiffs' motion for judgment on the pleadings (#89) pursuant to Federal Rule of Civil Procedure 12(c). After an extended briefing schedule, the motion has been fully briefed and is ready for disposition.

**I.    Background**

Plaintiff class members are former employees of Busch Entertainment Corporation ("BEC"), which was a member of the "Controlled Group" of Anheuser-Busch Companies, LLC ("ABC"). Plaintiffs further allege they are salaried participants in the Anheuser-Busch Companies Pension Plan ("Plan" or "Pension Plan").

The Pension Plan at the heart of this dispute provides, at Section 19.11(f), for certain enhanced retirement benefits in case of a "change of control." That Section states that a salaried participant "whose employment with the Controlled Group is involuntarily

1

terminated within three (3) years after the Change in Control" is entitled to an enhanced pension benefit that adds "an additional five (5) years of Credited Service" and "an additional five (5) years of age" to the benefit calculation, an enhanced amount that "shall in any event be at least fifteen percent (15%) larger" than the benefit to which the participant would have otherwise been entitled ("+5/+5 benefits" or "enhanced benefits").

In July 2008, Anheuser-Busch InBev, N.V. ("InBev") announced that it was acquiring ABC in November 2008 (the "Acquisition"). Plaintiffs allege that the transaction was a "Change in Control" under the Plan. ABC stated to all salaried employees in a memorandum that "if a participant in the [Plan] is involuntarily terminated within three years after a change in control, the participant's benefits will be determined based on five additional years of age and credited service or by increasing the benefits by 15 percent, whichever provides the larger benefit."

Sometime prior to November 2009, InBev announced that it was selling BEC to the Blackstone Group and that the transaction (the "BEC Sale") would be finalized on December 1, 2009. Plaintiffs assert that, as a result of the BEC Sale, they and all other similarly situated salaried employees of BEC had their employment with the Controlled Group involuntarily terminated within three years of the Change of Control. However, in November 2009 ABC informed the salaried employees of BEC that they "will not be eligible for the +5/+5 enhancement upon the date of your termination of employment with BEC after the sale is finalized." Plaintiffs allege that when they filed a claim for the enhanced benefits, the Plan Administrator denied the claim. Plaintiffs filed this lawsuit to

obtain the enhanced benefits through this ERISA action, and they have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) regarding Count I.

## II. Legal Standard

"Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Faibisch v. Univ. of Minnesota*, 304 F.3d 797, 803 (8th Cir. 2002). When considering a motion for judgment on the pleadings, the Court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

## III. Discussion

Plaintiffs rely on and urge this Court to adopt the judgment of the United States Court of Appeals for the Sixth Circuit in *Adams v. Anheuser-Busch Companies, Inc.*, 758 F.3d 743 (6th Cir. 2014). That case presented the identical issue presented by plaintiffs here --- plaintiffs in *Adams* were employed by a different ABC subsidiary, the Metal Container Corporation, but were participants in the same Pension Plan as plaintiffs here. After InBev acquired ABC, InBev spun off four of the Metal Container plants in a sale to the Ball Corporation with the agreement that the Metal Container employees would become employees of Ball and cease to be participants in the Pension Plan. *Id.* at 746. As a result of that change in employment, the *Adams* plaintiffs made claims to the Pension Plan administrator for recalculation of their future retirement benefits under Section

3

19.11(f) of the Plan. *Id.* "They contended that because their employment with an Anheuser-Busch-affiliated Controlled Group company ended within three years of a change in control, they were entitled to enhanced benefits from Anheuser-Busch at the time of their retirement." *Id.* ABC, of course, denied the claims because it said the plaintiffs had accepted employment with Ball and so had never experienced a period of unemployment. *Id.* The plaintiffs filed suit in the Southern District of Ohio, which dismissed the plaintiffs' claims for breach of fiduciary duty and for benefits and ultimately upheld the administrator's decision denying plaintiff's claims. *Id.* The District Court there held that the plan language was ambiguous and ruled that the Plan Administrator's decision was reasonable. On appeal, however, the Sixth Circuit reversed. *Id*. at 748.

Plaintiffs in this case urge this Court to follow the Sixth Circuit's reasoning, and, based solely on the pleadings, to grant partial judgment leaving only the matter of benefits calculations left for disposition. In support, the plaintiffs state that this Court may apply the doctrine of non-mutual collateral estoppel to prevent the defendants from further defending this matter in light of the *Adams* decision. Naturally, the parties disagree regarding whether applying such estoppel is appropriate here, and they devote most of the briefing on this motion to debating it.

However, the Court need not engage in a complicated collateral estoppel analysis nor need it wait for the submission of the administrative record. Although this is an unusual case, the Court may resolve this issue on the pleadings. Defendants' primary objection to making a determination on the pleadings is that they insist on a full review of

4

the administrative record. That record, they say, includes the Plan, the employment circumstances of the claimants, the relevant terms of the stock sale of BEC to the Blackstone Group, past applications of Section 19.11(f), and the available evidence of the Plan drafter's original intent when drafting Section 19.11(f).

But defendants do not dispute that the sole issue is simply the meaning of Section 19.11(f), which states that individuals "whose employment with the Controlled Group is involuntarily terminated within three (3) years after the Change in Control" would be entitled to certain enhanced benefits. As explained in the pleadings, the Plan Administrator believed that "involuntarily terminated" meant to have actually been terminated or lost employment. The plaintiffs argue that "involuntarily terminated" must be read in the context of their "employment with the Controlled Group" and does not require an actual loss of employment. *See also Adams*, 758 F.3d at 747 ("The scope of the parties' disagreement is narrow: they dispute only the meaning of the phrase "involuntarily terminated.").

The only reason defendants could have to insist on a full review of the administrative record, which is primarily evidence extrinsic to the Plan itself, is that the defendants intend to argue --- as they did before the Sixth Circuit in *Adams* --- that Section 19.11(f) is ambiguous. However, as the Sixth Circuit held in *Adams*, the held, "the language at issue is not ambiguous." *Id.* at 749. The Eighth Circuit law regarding review of this type of claim is clear and in agreement with the law applied by the Sixth Circuit in *Adams*:

> When interpreting an ERISA plan, we first look for the intent of the parties "by careful examination of the clause in question, giving the words in that clause their ordinary meaning." *Halbach v. Great–West Life & Annuity Ins. Co.,* 561 F.3d 872, 877 (8th Cir.2009). We examine the rest of the plan instrument only "[i]f the construction question cannot be resolved by reference to the clause alone." *Id.* Extrinsic evidence may be considered if "the intent or meaning of the [parties] ... cannot be determined by reference to ... the instrument." *Id.* at 877–88.

*Windstream Corp. v. Da Gragnano*, 757 F.3d 798, 803-04 (8th Cir. 2014), *as corrected* (July 8, 2014), *cert. denied sub nom. Commc'ns Workers of Am., AFL-CIO v. Windstream Corp.*, 135 S. Ct. 1481 (2015). The law of the Eighth Circuit is thus that this Court may only look beyond the Plan itself if the intent of parties cannot be determined by reference to the Plan. And, as the *Adams* court has explained, there is no need to go beyond the words of Section 19.11(f) at all.

> The adjectival phrase "involuntarily terminated" describes "employment." In fact, it describes a specific *type* of employment: "employment within the Controlled Group."
>
> …
>
> Given the fact that "involuntarily terminated" has meaning only when the thing that is being involuntarily terminated is identified, and given that the phrase at issue in Section 19.11(f) identifies the thing being terminated as "employment with the Controlled Group," it is clear that when each term in the provision is understood according to its ordinary meaning, and no term is ignored, eligibility for enhanced pension benefits pursuant to Section 19.11(f) requires satisfaction of five elements: (1) that the recipient be a plan participant (2) whose employment with the Controlled Group (3) is involuntarily terminated (4) within three years after (5) a change in control.

6

> . . .
>
> > Thus, when each of the terms in Section 19.11(f) is given its ordinary meaning, the phrase "whose employment with the Controlled Group is involuntarily terminated" is unambiguous and has only one plausible interpretation. It requires only that the individual's employment with the Controlled Group be involuntarily terminated, not that the individual experience a job loss or some otherwise undefined period of unemployment.

*Adams*, 758 F.3d at 748-49.   When the Sixth Circuit applied that provision to the facts of the case, it concluded that

> the plaintiffs' employment with the Controlled Group was "involuntarily terminated" when Anheuser–Busch sold Metal Container to Ball and the plaintiffs became Ball employees. The plan administrator's decision to the contrary was therefore arbitrary and capricious.

*Id.*

This Court agrees with the Sixth Circuit's analysis.   There is therefore no reason for the Court to wait until the full "administrative record" is before it because to look beyond the words of Section 19.11(f) itself would be improper.   Partial judgment on the pleadings will therefore be granted to plaintiffs on Count I.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion for partial judgment on the pleadings (#89) is GRANTED.

Dated this   8th   day of July, 2015.

                                              STEPHEN N. LIMBAUGH, JR.
                                              UNITED STATES DISTRICT JUDGE