UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRIAN KNOWLTON, *et al.*, individually, and on behalf of all others similarly situated, ) ) ) ) Plaintiffs, ) ) v. ) ) ANHEUSER-BUSCH COMPANIES, ) LLC, *et al.*, ) Defendants. ) | Consolidated Case No. 4:13-cv-210 SNLJ |

# MEMORANDUM AND ORDER

This matter is before the Court on remand from the United States Court of Appeals for the Eighth Circuit. This Court had granted judgment on the pleadings to plaintiffs, who claimed that, as salaried participants in the Anheuser-Busch Companies Pension Plan ("Plan" or "Pension Plan"), they were entitled to certain enhanced retirement benefits under Section 19.11(f) of the Plan. This Court agreed with plaintiffs. The Eighth Circuit affirmed that determination but remanded for further proceedings on calculation of benefits.

Currently before the Court is the plaintiffs' motion for preliminary approval of attorney fees and incentive awards for the named plaintiffs in this class action (#141). Defendants oppose the motion. The parties sought and received an extended briefing schedule, and the matter is now ripe for disposition. For the reasons discussed below, the

1

Court will deny the motion.

**I.      Attorney Fees**

Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1), provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." Although there is no presumption in favor of attorney fees under ERISA's "fee-shifting" statute[1], a prevailing plaintiff rarely fails to receive attorney fees paid by defendant in addition to the award of damages. *See Starr v. Metro Sys., Inc.*, 461 F.3d 1036, 1041 (8th Cir. 2006). Fees under § 502(g)(1) are usually calculated under the "lodestar" method, multiplying the number of hours reasonably expended on a case by a reasonable hourly rate for the attorneys working those hours. *See Emmenegger v. Bull Moose Tube Co.*, 33 F. Supp. 2d 1127, 1137 (E.D. Mo. 1998); *see also Tussey v. ABB, Inc.*, 850 F.3d 951, 961-62 (8th Cir. 2017).

In this case, however, Class Counsel request that the Court award attorney fees on a percentage basis: one-third of the first $10 million and 25% of the balance of the gross amount recovered by the class. Counsel expects that the gross amount, based upon current data, will be between $56 million and $65 million. Class representatives had signed contingency fee contracts with Class Counsel, and the percentages requested by Counsel reflect the lowest percentage fee negotiated by Class Counsel and any Class member. Notably, under the proposal, the percentage of the Class Fund recovered as attorney fees will be effectively reduced by (among other things) the application of

---

[1] The "fee-shifting" statute is so-named because it causes the losing party to pay the winning party's attorney fees.

ERISA's fee-shifting statute as an offset against the fees owed by the Class. The parties are attempting to agree on the amount of statutory fees due under the fee-shifting statute.

For the purpose of calculating contingency fees, Class Counsel proposes including in the "gross amount recovered by the class" the following: (a) the cash "make-whole" payments to be made to the Class to compensate them for past benefit payments that did not include the enhanced pension benefits provided by Section 19.11(f) of the Plan, (b) interest on those make-whole payments at the rate of 6.5% per year, compounded annually, as provided in Section 14.12 of the Plan; and (c) the increase in future pension benefits to be paid to the Class, calculated as the actuarial present value of the future enhanced amount of such benefits, as provided by Section 19.11(f) of the Plan. The gross amount of benefits would then be paid in a common fund for distribution to the class members after the percentage deduction for attorney fees.

Complicating matters for Class Counsel is ERISA's "anti-alienation provision," 29 U.S.C. § 1056(d)(1), which states that "each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." That provision is meant to protect beneficiaries' rights to their future, post-retirement stream of income. Class Counsel insists that, after Plan funds have been paid into a common fund as contemplated here, the funds are constructively in the hands of the beneficiaries and are no longer held by the administrator.

Plaintiffs' counsel suggests the following structure to avoid running afoul of the anti-alienation law. The class would be divided into three groups: (1) those who have

3

received their Plan benefits as a lump-sum and who will therefore receive enhanced benefits in a lump sum "make-whole" payment; (2) those who have not yet received any Plan benefits; and (3) those who are receiving plan benefits being paid out over time. Some class members would fall into groups (1) and (3) because they are receiving periodic payments in addition to having already received a 50% lump sum.

Class Counsel states that the anti-alienation provision is irrelevant to those in Group 1. Their past-due benefits, plus interest and less attorney fees, can be paid to them (and fees paid to Class Counsel) through a claims administration trust account, which is essentially a common fund.

As for Group 2, Class Counsel states that the Plan may pay Class Counsel a fixed percentage of the actuarial present value of the enhanced benefits. Then, when those Class members elect to receive pension benefits, they would receive only the balance of the calculated enhancement to their benefit.

As for Group 3, Class Counsel states that those members will receive a lump sum make-whole payment for the enhanced benefits they should have received in the past plus an increase in future payments. Counsel states:

> Class Counsel can be awarded fees based on a percentage of the make-whole payment plus a fixed percentage of the actuarial present value of the increased future payments. These fees, however, can only be taken out of the *lump-sum, make-whole payment*. If the fees exceed a Class member's lump sum payment (so that the Class member receives no lump sum), any unpaid portion of the fees calculated on the increased future benefit payments would not be paid to Class Counsel.

4

(#142 at 13.)  Class Counsel would therefor forfeit any fees that exceeded the lump sum amount.

In sum, counsel assert that, by structuring the attorney fees payments as described above, they avoid any problems with the anti-alienation statute.  Group 1's make-whole payments can be paid into a common fund account established for claims administration rather than directly from the Plan to the Class members. Then, attorney fees may be paid to Class Counsel.

The defendant Plan objects to the Class Counsel's proposed fee structure for the reason that attorney fees are limited to ERISA's fee-shifting statute.  At the outset, Class Counsel insists that the defendant Plan has no standing to oppose the attorney fees structure proposed by Class Counsel.  Plaintiffs' citations in support, however, refer to common fund cases that do not involve pension plans as defendants.  (#148 at 3-4.)  Here, even though defendants will not pay additional money if attorney fees are paid out of the "common fund," the defendants still have an interest in operating within the confines of ERISA's anti-alienation provision.

The problem, the Plan insists, is that there can be no "common fund" in ERISA cases because the Plan cannot distribute pension benefits to anyone but the intended beneficiaries.  And under the anti-alienation provision, lawyers claiming attorney fees from their representation of the class of beneficiaries are in effect creditors of the beneficiaries.  Nonetheless, Class Counsel cites to several ERISA cases in which a portion

of a common fund was used for attorney fees despite the anti-alienation statute. In *Savani v. URS Prof'l Sols. LLC*, 121 F. Supp. 3d 564, 569-70 (D.S.C. 2015), for example, the plaintiff class had settled with the defendant plan, and the plan had tendered a "past benefits judgment" into the hands of class counsel for the benefit of the class. In that case, the court determined that the funds were "no longer within the fiduciary responsibility of Defendant Plan managers," and that the anti-alienation statute therefore no longer applied. *Id.* at 569. In this case, however, there has been no such settlement or tender. Rather, plaintiffs suggest that fees be subtracted from the benefits that are owed by the Plan after transfer to a "claims administration trust account," which is in essence a common fund of benefits that have not yet been paid out --- benefits that appear squarely within the anti-alienation statute's ambit.

Plaintiffs' other citations, *e.g.*, *Brundle ex rel. Constellis Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*, 258 F. Supp. 3d 647, 671 (E.D. Va. 2017); *In re Xcel Energy, Inc. Sec., Derivative and ERISA Litigation*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005), are likewise unpersuasive.[2] In *Brundle*, the court approved a contingent fee from funds that were not yet in control of plan. 258 F. Supp. 3d at 671. *Xcel Energy* is distinguishable, too, because the court did not address the anti-alienation rule at all.[3] Even the *Savani*

---

[2] Class Counsel also cites to *US Airways v. McCutchen*, 569 U.S. 88, 90 (2013) for the proposition that "common fund doctrine applies under ERISA except where the plan expressly precludes it." (#142 at 8.) That case is wholly distinguishable because it did not involve a class action but rather involved an ERISA plan's attempt to seek reimbursement for its payment of medical costs when a plan member recovered from a third party tortfeasor in litigation.

[3] Plaintiffs' other cases supporting their common fund analysis are not ERISA cases and are not

6

court --- which considered settlement funds tendered by agreement to a common fund to be outside the purview of the anti-alienation provision --- recognized that attorney fees could not be collected from "undistributed and/or only potential future benefits." 121 F. Supp. 3d at 569.

In contrast, the leading case on this issue held that attorneys seeking fees for services rendered to a class of plan participants could not invoke the common fund doctrine to "avoid the statutory protection ERISA extends to pension benefits while they are held by the plan administrator." *Kickham Hanley P.C. v. Kodak Retirement Income Plan*, 558 F.3d 204, 211 (2d Cir. 2009). "Only once the proceeds of the pension plan have been released to the beneficiary's hands, can creditors and others pursue claims against the funds and the funds' owner(s)." *Id.* (quoting *United States v. All Funds Distributed to Weiss*, 345 F.3d 49, 57 (2d Cir. 2003)).

Although few courts in this Circuit have addressed the precise issue before this Court, the prototypical case appears to be *Tussey v. ABB, Inc.*, 850 F.3d 951, 961-62 (8th Cir. 2017), in which the Eighth Circuit affirmed the $12.9 million award of an ERISA class action attorney fees under the fee-shifting statute, but without any additional percentage-based fees taken from a common fund. The Court will thus address the matter

---

constrained by any statutory anti-alienation provision. *E.g.*, *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999) (environmental claims); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1037 (8th Cir. 2002) (unauthorized use of customer account information); *McKeage v. TMBC, LLC*, 847 F.3d 992 (8th Cir. 2017) (unauthorized practice of law claims); *Jackson v. Rheem Mfg. Co.*, 904 F.2d 15 (8th Cir. 1990) (racial discrimination); *In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 736 F. Supp. 1007, 1012 (E.D. Mo. 1990).

of attorney fees under the fee-shifting statute at the appropriate time.

## II.    Incentive Award

Plaintiffs request that the Court order incentive payments be made to the Class representatives as follows:   $50,000 each to Brian Knowlton, Nancy Anderson, Richard Angevine, and Douglas Minerd, and $5,000 each to Andy Fichthorn, Gary Lensenmayer, Donald W. Mills, Jr., Joe Mullins, and Charles Wetesnick, for a total incentive-award package of $225,000.

This request, though, is premature until the full amount of damages has been determined.   In any event, as the Eighth Circuit held in *Tussey*, any incentive award is not part of the attorney fees calculation.   Incentive awards will be taken from the total amount of damages for all the class participants.   *Tussey*, 850 F.3d at 961-62 (affirming incentive awards in ERISA class action of $25,000 for each class representative and noting that incentive awards should be paid by the Class "out of the class recovery.").

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion for preliminary approval of attorney fees and incentive awards for the named plaintiffs in this class action (#141) is DENIED without prejudice at this time.

Dated this   24th   day of August, 2018.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE